UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ARIEL MENDEZ,  :
    Petitioner,  :
                            :
   v.  :    C.A. No. 15-408ML
                            :
DANIEL MARTIN, Warden,  :
    Respondent.  :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

    While he was incarcerated, apparently for just a few months, at the Wyatt Detention Facility in Central Falls, Rhode Island, *pro se* petitioner Ariel Mendez named the Wyatt's warden, Daniel Martin, as the respondent to a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 that he filed in the District of Rhode Island on September 28, 2015. The petition challenges the duration of his confinement due to the loss of forty-one days of good-time credits based on the results of a breathalyzer test administered at a residential re-entry work release facility in Hartford, Connecticut. ECF No. 1. He is now incarcerated at the Federal Corrections Institution, Schuylkill ("FCI Schuylkill") in Minersville, Pennsylvania, which is within the Middle District of Pennsylvania. ECF No. 9. According to the Bureau of Prisons Inmate Locator, his "release date" is listed as May 19, 2016. See Federal Bureau of Prisons, Find an inmate, https://www.bop.gov/inmateloc/ (last visited on Apr. 18, 2016).[1]

    Respondent answered the petition with a motion to dismiss (ECF No. 10), which was referred to me for preliminary review, findings and recommended disposition pursuant to 28

---

[1] This public information is not mentioned by either Petitioner or Respondent in their written arguments. It is impossible for this Court to ascertain what it means or whether it is accurate. One might speculate that it represents the end of Plaintiff's incarcerative sentence, shortened for good-time credit. Petitioner's sentence also includes a sixty month term of supervision to follow the term of incarceration. ECF No. 10-3 at 2.

U.S.C. § 636(b)(1)(B). Petitioner's opposition was due on December 24, 2015; when none was filed, I issued an order to show cause why the Court should not proceed to rule on the motion in the absence of Petitioner's opposition. Petitioner responded with a motion to extend time, which was granted, making his opposition due on March 21, 2016; it was finally received on March 28, 2016. ECF No. 13. An extension also delayed Defendant's reply, which was filed on April 14, 2016. ECF No. 15. Mindful that any further delay may moot Petitioner's claim,[2] I have expedited consideration of the motion. In reliance on the First Circuit's holding in <u>Vasquez v. Reno</u>, 233 F.3d 688 (1st Cir. 2000), guided by the District of Massachusetts's thoughtful analysis in <u>Gonzalez v. Grondolsky</u>, Civil Action No. 14-13279-MGM, 2016 WL 270381 (D. Mass. Jan. 21, 2016), and consistent with this Court's decision in <u>Rumierz v. Immigration & Naturalization Service</u>, No. C.A. 00-359 ML, 2000 WL 1920003, at *3 (D.R.I. Dec. 27, 2000), I recommend that Respondent's motion to dismiss be granted without prejudice to the refiling of this petition in the Middle District of Pennsylvania against an appropriate respondent.

I. **BACKGROUND**

Based on his guilty plea in the District of Connecticut to conspiracy to possess and distribute cocaine, in 2013, Petitioner was sentenced to a forty-five month term of incarceration in the custody of the Bureau of Prisons ("BOP"). ECF No. 10-3 at 2-3. In 2015, BOP placed

---

[2] Once a § 2241 petitioner is released from prison, most courts conclude that there is no longer any available relief that can be judicially awarded. See, e.g., <u>Francis v. Maloney</u>, 798 F.3d 33, 37-38 (1st Cir. 2015); <u>Eichwedel v. Curry</u>, 700 F.3d 275, 279 (7th Cir. 2012); <u>Burkey v. Marberry</u>, 556 F.3d 142, 148 (3d Cir. 2009); but see <u>Mujahid v. Daniels</u>, 413 F.3d 991, 994-95 (9th Cir. 2005) (term of supervised release precludes dismissal at end of term of incarceration because it remains possible that sentencing court would reduce term of supervision). At that point, the case would be dismissed on the ground of mootness. See <u>United States v. Munsingwear</u>, 340 U.S. 36, 39-40 (1950). At least one court, aware of a publically available "release date" so close that it appeared that the petition challenging the loss of good-time credit would be moot before the court could consider it on the merits, stayed decision on the habeas request and issued a show cause order directing the petitioner to advise the court why his petition should not be denied as moot. <u>Relerford v. Rock Cty. Sheriff's Dep't</u>, No. 06-C-613-C, 2006 WL 3192359, at *2 (W.D. Wisc. Nov. 1, 2006). In another case, where the petition raised a recurring issue on the proper interpretation of the good-time credit statute, the court rushed to decision on the merits to avoid the mootness deadline. <u>Sash v. Zenk</u>, 344 F. Supp. 2d 376, 377 (E.D.N.Y. 2004). Because the parties have not raised it, I make no finding regarding mootness; rather, this report and recommendation simply takes into consideration the risk of mootness.

2

Petitioner at Watkinson House, a residential re-entry work release facility located in Hartford, Connecticut.  On March 1, 2015, Petitioner was required to undergo a random breathalyzer test upon his entry into the facility, which produced positive readings, spaced fifteen minutes apart, of 0.034 and 0.036.  ECF Nos. 1 at 2, 1-1 at 1-2.  Based on these results, Petitioner was issued an initial incident report on March 2, 2015, charging him with a violation of Code 112 of the BOP Inmate Discipline Program, which prohibits the use of alcohol not prescribed by medical staff.  ECF No. 1-1 at 1.  Because the incident report incorrectly stated the time both of Petitioner's return to the facility and the times at which the breathalyzer tests had been administered, a corrected incident report was issued on March 4, 2015.  ECF No. 1-1 at 2.  The only difference between the first and the second reports was the change in the entry time from 5:10 a.m. to 4:40 a.m. and the change in the test administration times from 5:40 a.m./5:55 a.m. to 4:40 a.m./4:55 a.m.

      Two days later, a hearing was held on the violation presided over by a hearing officer.  ECF No. 1-1 at 5.  There is some confusion in the record about the hearing.  The hearing officer signed a "Memo to File," ECF No. 1-1 at 4, which stated that she was unable to complete the hearing as scheduled at 9:30 a.m. on March 6, 2016, because of scheduling conflicts, yet several hours later at 3:26 p.m. on March 6, 2016, she signed the "CDC Action," which memorializes the finding that Petitioner committed the violation.[3]  ECF No. 1-1 at 5.  Based on this finding, the Discipline Hearing Officer ("DHO") imposed sanctions on Petitioner for the violation, which included the loss of forty-one days of good conduct time.  ECF No. 1-1 at 8; see 28 C.F.R. §

---

[3] In passing, Petitioner's opposition brief argues (for the first time) that the "Memo to File" permits the inference that the hearing officer did not stay for the entire hearing and signed the CDC Action form without hearing all of the evidence.  ECF No. 13 at 14.  The Court observes that it is equally susceptible of the interpretation that the start of the hearing was delayed or that it started at 9:30 a.m. but was not completed until the afternoon due to the hearing officer's scheduling problem.  This is a red herring – Petitioner's concession that he "does not dispute the fact that the CDC conducted the hearing," ECF No. 13 at 11, puts the matter to rest.

541.8. On April 7, 2015, Petitioner appealed the CDC finding to the BOP Regional Director based on the time discrepancies between the first and second versions of the incident reports and because the second incident report was given to Petitioner outside of the twenty-four hour time limit for issuance of such reports.[4] ECF No. 1-1 at 7.  In addition to the stated grounds, Petitioner's "reason for appeal" states, "the mistakes made by Staff, led me to believe that other mistakes were made also." Id.  The appeal was denied on May 8, 2015.  ECF No. 1-1 at 8.

On May 20, 2015, Petitioner appealed the decision of the Regional Director to the General Counsel.  ECF No. 1-1 at 9.  In addition to the grounds stated in the first-level appeal, Petitioner also relied on the new argument that the breathalyzer device used to administer the test had not been working properly; his appeal explained that this argument was based on newly discovered information that he learned from a Watkinson House staffer, who told him the device had not been working properly and had had to be replaced.  ECF No. 1-1 at 9-10.  According to Petitioner's second-level appeal, the staffer disclosed this information (and told Petitioner that he would report it to BOP) on May 15, 2015, well after both the March hearing and the April first-level appeal.  ECF No. 1-1 at 10.  In an apparent amendment to the second-level appeal, which was signed on June 23, 2015, Petitioner added further contentions, namely that the staff member who administered the breathalyzer test was inexperienced and "not officially certified," as well as that there was no "chain of command" related to the procedure for performing breathalyzer tests.  ECF No. 1-1 at 11-12.  Petitioner did not receive a response from the General Counsel to either his May second-level appeal or his June amendment, effectively amounting to a denial of both.  28 C.F.R. § 542.18; Smith v. Oliver, 615 F. App'x 905, 907 (10th Cir. 2015).

---

[4] BOP Regulations provide that a "staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." 28 C.F.R. § 541.5(a); Wallace v. Fed. Det. Ctr., 528 F. App'x 160, 162 n.2 (3d Cir. 2013) (per curiam) (28 C.F.R. § 541.5(a) formerly codified at § 541.15(a)).

At approximately the same time as the June 2015 amended appeal, Petitioner was transferred[5] from Watkinson House in Connecticut to the Wyatt Detention Facility in Central Falls, Rhode Island.[6] Petitioner filed this habeas action on September 28, 2015, while incarcerated there. As required for a petition brought pursuant to 28 U.S.C. § 2241, the petition named as Respondent the warden of the Wyatt Detention Facility, who was his "immediate custodian" as of that time. Rumsfeld v. Padilla, 542 U.S. 426, 447 (2004); United States v. Badillo, No. CRIM. 10-10341-NMG, 2013 WL 6835210, at *2 n.1 (D. Mass. Dec. 18, 2013) (citing cases). However, a few weeks later, Petitioner was transferred again, first to the Metropolitan Detention Center in Brooklyn, New York, ECF No. 6, and then to FCI Schuylkill in Minersville, Pennsylvania. ECF No. 9. He remains there, with a published "release date" of May 19, 2016. See n.1, *supra*.

## II.   ANALYSIS

Respondent's motion to dismiss challenges the petition on the following grounds: 1) Respondent is no longer Petitioner's immediate custodian; 2) the District of Rhode Island is an improper venue; 3) the District of Rhode Island lacks personal jurisdiction over the proper respondent, Petitioner's current immediate custodian; 4) Petitioner has failed to exhaust his administrative remedies; and 5) Petitioner fails to state a claim upon which relief may be granted. I begin with Respondent's jurisdictional and venue arguments, which are grounded in the immediate-custodian principle and the related concept of territorial jurisdiction. These foundation principles are focused on the jurisdictional problem posed by the reality that, while

---

[5] The record does not reveal exactly when or why Petitioner was transferred to the Wyatt Detention Facility.

[6] The Wyatt Detention Facility is not owned by the United States or operated by BOP. Rather, it is an operation of the Central Falls Detention Center Corporation, a quasi-public corporation governed by a five-member Board of Directors appointed by the Mayor of Central Falls. Lacedra v. Donald W. Wyatt Det. Facility, 334 F. Supp. 2d 114, 121 (D.R.I. 2004).

Petitioner properly named his immediate custodian when he filed this petition, his transfer to FCI Schuylkill means that he is no longer in the custody of Warden Martin at the Wyatt Detention Facility and now is in the custody of Warden Perdue in the Middle District of Pennsylvania.  See ECF No. 13 at 2.

    A.    <u>Immediate-Custodian and Territorial-Jurisdiction Rules</u>

The writ of habeas corpus is "a procedural device to subject restraints of liberty to judicial scrutiny."  <u>Santiago-Melendez v. Puerto Rico</u>, 405 F. Supp. 2d 196, 198 (D.P.R. 2005) (citing <u>Peyton v. Rowe</u>, 391 U.S. 54, 58 (1968)).  The provision on which Petitioner relies, 28 U.S.C. § 2241, "may be used to attack the manner in which a sentence is executed, as opposed to the sentence itself," <u>Gonzalez-Fuentes v. Molina</u>, 607 F.3d 864, 875 n.9 (1st Cir. 2010), and has long been interpreted to extend to allegations of denial of a prisoner's good-time credits without due process of law.  See <u>Francis v. Maloney</u>, 798 F.3d 33, 36-37 (1st Cir. 2015) (describing § 2241 as "traditionally . . . available to inmates challenging the revocation of good-time credits"); <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1269 (9th Cir. 1989) (§ 2241 available to challenge reduction of good-time credits after federal prison disciplinary proceeding).

Under 28 U.S.C. § 2241(a), "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."  28 U.S.C. § 2241(a).  Under 28 U.S.C. § 2242, the appropriate respondent to the § 2241 habeas petition is "the person who has custody over" the petitioner.  This proposition is echoed in 28 U.S.C. § 2243, which mandates that "[t]he writ, or order to show cause shall be directed to the person having custody of the person detained."  These bedrock principles are confirmed by the controlling case law in this Circuit – the writ must be directed to the person who has "day-to-day control over the petitioner and is able to produce the latter before the habeas court."  <u>Vasquez</u>, 233 F.3d at 691.  The statutory language, as well as

the jurisprudence governing federal habeas petitions, is foundational to two distinct, but often overlapping, principles addressed by the Supreme Court in its seminal habeas decision, Rumsfeld v. Padilla, 542 U.S. 426 (2004): the immediate-custodian rule and the territorial-jurisdiction rule. Grondolsky, 2016 WL 270381, at *2.

The immediate-custodian rule sets as the default "that the proper respondent is the warden of the facility where the prisoner is being held." Padilla, 542 U.S. at 435. As a procedural matter, identifying the proper respondent is critical because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 494-95 (1973). As the Supreme Court emphasized in Braden:

> The important fact to be observed in regard to the mode of procedure upon this writ is, that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter. The officer or person who serves it does not unbar the prison doors, and set the prisoner free, but the court relieves him by compelling the oppressor to release his constraint. The whole force of the writ is spent upon the respondent.

Id. at 495 (quoting In the Matter of Jackson, 15 Mich. 417, 439-40 (1867)); see Vasquez, 233 F.3d at 691 ("The warden is the proper custodian because he has day-to-day control over the petitioner and is able to produce the latter before the habeas court.").

The second principle, the territorial-jurisdiction rule, is derived from the statutory language limiting district courts to granting habeas relief "within their respective jurisdictions." 28 U.S.C. § 2241(a). Thus, "the court issuing the writ [must] have jurisdiction over the custodian." Padilla, 542 U.S. at 442 (quoting Braden, 410 U.S. at 495). The Supreme Court has explained that "Congress added the limiting clause – 'within their respective jurisdictions' – to the habeas statute in 1867 to avert the 'inconvenient [and] potentially embarrassing' possibility that 'every judge anywhere [could] issue the Great Writ on behalf of applicants far distantly

7

removed from the courts whereon they sat.'" Id. (quoting Carbo v. United States, 364 U.S. 611, 617 (1961)); see Braden, 410 U.S. at 496 (legislative history of 1867 statute reveals that territorial-jurisdiction clause inserted to avoid permitting "a district judge in Florida to bring before him some men convicted and sentenced and held under imprisonment in the State of Vermont or in any of the further States"). "Accordingly, with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" Padilla, 542 U.S. at 442 (quoting Carbo, 364 U.S. at 618). Padilla expressly rejects the "long-arm approach to habeas jurisdiction," explaining that "Braden in no way authorizes district courts to employ long-arm statutes to gain jurisdiction over custodians who are outside of their territorial jurisdiction." Id. at 445; see also id. at 444 (Braden "did not indicate that a custodian may be served with process outside of the district court's territorial jurisdiction"). Once the petitioner is in the custody of a warden beyond the reach of the respondent, the action becomes moot. Grondolsky, 2016 WL 270381, at *4 (listing cases).

In Ex parte Endo, 323 U.S. 283 (1944), the Supreme Court created an exception to this mootness rule for cases in which the petitioner properly filed the habeas petition against the immediate custodian and thereafter was transferred outside the district court's territorial jurisdiction. Id. at 306. However, this exception is narrow. It applies only "where a person in whose custody [the petitioner] is remains within the district." Id.; see Jones v. Cunningham, 371 U.S. 236, 243-44 (1963) ("a District Court did not lose its jurisdiction when a habeas corpus petitioner was removed from the district so long as an appropriate respondent with custody remained"); Copley v. Keohane, 150 F.3d 827, 830 (8th Cir. 1998) ("It is true that, if a district court has proper jurisdiction when a habeas petition is filed, as is the case here, a subsequent

8

transfer of the prisoner will not defeat habeas jurisdiction, but only so long as an appropriate respondent with custody remain[s] in the district."). The facts of Endo confirm its meaning – it addressed the detention of a Japanese-American citizen in California held by the War Relocation Authority ("WRA"); because the Acting Secretary of Interior advised the court that, if the writ issued and was directed to any official of the WRA, including an assistant director located in San Francisco, still within the jurisdiction of the District Court, the corpus of appellant would be produced. Ex parte Endo, 323 U.S. at 304-05. Put differently, if there is an alternative respondent within the district who has the legal authority to produce the body, the case is not moot. Id. at 305. There is no suggestion that this exception applies here. That is, no alternative respondent located in the District of Rhode Island possesses the authority to direct the warden of FCI Schuylkill to produce Petitioner.

It is important to note that, while § 2241(a) refers to "jurisdiction," the rules (immediate-custodian and territorial-jurisdiction) are not jurisdictional "in the sense of subject-matter jurisdiction."[7] Padilla, 542 U.S. at 434 n.7; Grondolsky, 2016 WL 270381, at *5; see also United States v. Poole, 531 F.3d 263, 270-71 & n.12 (4th Cir. 2008). Indeed, the precise nature of these rules is not entirely clear. Padilla, 542 U.S. at 453 (Kennedy, J., concurring) ("It is difficult to describe the precise nature of these restrictions on the filing of habeas petitions, as an examination of the Court's own opinions in this area makes clear."). Nevertheless, however they may be characterized, at bottom, this Court must consider whether the named respondent has the power to provide the relief sought. As the Ninth Circuit held in Smith v. Idaho, 392 F.3d 350, 355 n.3 (9th Cir. 2004), "when a habeas petitioner has failed to name the proper respondent

---

[7] For example, in contrast to subject matter jurisdiction, which cannot be waived, the government can and often does waive the immediate-custodian and territorial-jurisdiction requirements of § 2241. See, e.g., Blackstock v. Hufford, No. 4:CV-11-0791, 2011 WL 2470415, at *2-3 (M.D. Pa. June 20, 2011) (citing Padilla, 524 U.S. at 451-52). There is no waiver here, of course, in that Respondent aggressively asserts the immediate-custodian/territorial-jurisdiction principles.

9

pursuant to § 2242, we must ask *sua sponte* whether the respondent who is named has the power to order the petitioner's release.  If not, the court may not grant effective relief, and thus should not hear the case unless the petition is amended to name a respondent who can grant the desired relief."  See also Padilla, 542 U.S. at 441 (distinguishing between a court's initial acquisition of jurisdiction over a petition and its ability to grant habeas relief).  Thus, this Court's analysis must focus on whether the warden of the Wyatt Detention Facility has the power to afford Petitioner the relief he seeks should the writ issue, mindful that, because he is merely the employee of an entity that contracts with the quasi-public corporation that operates the Wyatt Detention Facility, his authority is even more attenuated than if he were a BOP warden.  See Lacedra v. Donald W. Wyatt Det. Facility, 334 F. Supp. 2d 114, 121 (D.R.I. 2004).

In arguing that this Court should retain this case and reach the merits of his petition, Petitioner relies on cases from outside this Circuit, which seem to invoke the Endo exception, but ignore its holding that an alternative appropriate respondent must remain in the district.  See White v. Lamanna, 42 F. App'x 670, 671 (6th Cir. 2002) (reaching merits of petition despite petitioner's transfer outside district; no analysis of alternative custodian); Santillanes v. U.S. Parole Comm'n,[8] 754 F.2d 887, 888 (10th Cir. 1985) (holding that jurisdiction attaches at initial filing and is not destroyed by a subsequent transfer without regard to alternative custodian); Wheeler v. Rivera, 2:14CV00064 KGB/JTR, 2015 WL 7731473, at *2 n.2 (E.D. Ark. April 23, 2015) ("post-filing transfer does not generally defeat habeas jurisdiction;" no analysis of alternative custodian); Snyder v. Johns, Civil Action No. 0:11-00100-HRW, 2011 WL 4352558,

---

[8] Santillanes also misreads Ahrens v. Clark, 335 U.S. 188, 193 (1948).  Santillanes, 754 F.2d at 888.  Ahrens stands for the proposition that, in passing the habeas statutes, Congress did not contemplate the production of prisoners thousands of miles from the court that issues the writ and affirmed dismissal of a petition brought in the District of Columbia because the petitioners were held in New York.  Ahrens, 335 U.S. at 189, 191, 193.

10

at *2 (E.D. Ky. Sept. 16, 2011) ("subsequent transfer . . . will not defeat habeas jurisdiction;" no analysis of alternative custodian).

Neither the First Circuit nor any district courts within this Circuit, as far as this Court's research has revealed, have adopted this approach. Thus, in Vasquez, our Circuit Court considered a § 2241 petition that the district court had already addressed on the merits. Noting that the petition named a respondent who was "neither the custodian . . . nor the proper respondent to a habeas petition," and holding that "the district court ought not to have acted on the merits," the court of appeals remanded the matter to the district court with instructions to dismiss or transfer. 233 F.3d at 689, 697. Similarly, in a recent and carefully reasoned decision of the District of Massachusetts, Grondolsky, 2016 WL 270381, the court dealt with facts analogous to those presented here: a § 2241 challenge to the length of the sentence brought by an inmate who had been incarcerated at Massachusetts-based FMC-Devens when he filed the petition, but had been transferred to a facility in South Dakota. Id. at *2. After concluding that there was no indication that the transfer was an attempt by the government to manipulate the litigation,[9] id. at *5 (citing Padilla, 542 U.S. at 441), the district court held that the petition must be dismissed without prejudice to being refiled in the District of South Dakota. Id. at *6; see also Aitcheson v. Holder, No. CV 15-11123-NMG, 2015 WL 10434871, at *2 (D. Mass. Dec. 31, 2015) (petition dismissed because petitioner transferred from District of Massachusetts to Alabama shortly after petition filed; proper respondent is Alabama-based warden). Decisions from Rhode Island and Puerto Rico are consistent, uniformly holding that the habeas petition must be litigated in the district where the immediate custodian is located. See, e.g., Johnson v. Immigration & Customs Enf't, 960 F. Supp. 2d 347, 349 (D.P.R. 2013) (petition transferred to

---

[9] Nor is there any suggestion in this case that Petitioner was transferred out of the Wyatt Detention Facility in an attempt by the government to manipulate this litigation.

11

Southern District of Georgia after petitioner moved to correctional facility there; "writs of habeas corpus challenging present physical confinement may only be issued by a district court in the district where the petitioner is confined"); Rumierz, 2000 WL 1920003, at *3 (after petitioner transferred from detention in Rhode Island to detention in New Jersey, petition transferred to District of New Jersey, citing Vasquez).

      Based on this analysis, I find that the immediate-custodian and territorial-jurisdiction rules require that this matter must be dealt with in the Middle District of Pennsylvania where Petitioner's immediate custodian is located. See Braden, 410 U.S. at 493–94, 500 (immediate custodian rule is consistent with "traditional venue considerations," including the location of witnesses and convenience of the parties); Ahrens, 335 U.S. at 191-92 (opportunity for escape afforded by travel and administrative burden and cost of transportation are reasons why habeas statutes restrict jurisdiction of district court to petitioners detained within its territory). It is pointless to proceed in the District of Rhode Island, where the writ would be toothless in that the warden of the Wyatt Detention Facility lacks the authority to produce the body of a prisoner in the custody of a BOP warden in the Middle District of Pennsylvania.

      The final issue is whether the matter should be dismissed without prejudice to refiling in the Middle District of Pennsylvania as the Massachusetts court ordered in Grondolsky, 2016 WL 270381, at *6, or transferred to that district for further proceedings as this Court did in Rumierz, 2000 WL 1920003, at *3. Judicial efficiency would doubtless be better served by the transfer of this action to the Middle District of Pennsylvania rather than dismissal without prejudice. However, the venue transfer statutes are clear – this Court lacks the authority to transfer to a district where the action could not have been brought when it was initially commenced.[10]  28

---

[10] In a different context, some courts solve this problem by using the All Writs Act, 28 U.S.C. § 1651(a), to transfer a habeas petition. See, e.g., In re Nwanze, 242 F.3d 521, 526 (3d Cir. 2001) (transfer of § 2241 petition to court of

U.S.C. §§ 1404(a), 1406(a), 1631; see Hoffman v. Blaski, 363 U.S. 335, 342-44 (1960). When Petitioner filed this petition, he could only file here as his immediate custodian was the warden of the Wyatt Detention Facility. Accordingly, a venue transfer is not an available solution. Hicks v. Duckworth, 856 F.2d 934, 935 (7th Cir. 1988) (28 U.S.C. § 1404(a) does not authorize transfer of habeas petition to court where it could not have been brought); Grondolsky, 2016 WL 270381, at *5 (court lacks authority to transfer because all transfer statutes limit transfer to district where action could initially have been brought).

Based on the foregoing analysis, I will recommend that this Court dismiss the petition without prejudice[11] so Petitioner can refile it in the Middle District of Pennsylvania against an appropriate respondent, presumably the warden of FCI Schuylkill. But first, a peek at the merits.

B.     Exhaustion and Failure to State a Claim

Mindful of the risk of looming mootness[12] and the judicial efficiencies that arise from the swift disposition of a meritless case, I next turn briefly to Respondent's merits arguments, which challenge whether Petitioner properly exhausted administrative remedies and whether the petition contains facts that plausibly claim a due process deprivation. A court questioning its jurisdiction over a habeas petition may "take a peek at the merits" to determine whether

---

conviction on government's motion based on All Writs Act because venue statutes do not permit transfer); Alford v. DeBoo, Civil Action No. 5:11cv10, 2011 WL 3759128, at *5-6 (N.D. W. Va. July 20, 2011) (transfer of § 2241 petition to court of conviction on government's motion based on All Writs Act because venue statute does not support it). This solution is not applicable here because the Middle District of Pennsylvania is not the district of conviction. See, e.g., Maysonet v. O'Brien, No. 1:12CV30, 2013 WL 5230002, at *10 (N.D. W. Va. Sept. 17, 2013); Short v. Schultz, No. CIV.A.08-0186(JBS), 2008 WL 305594, at *2-3 (D.N.J. Jan. 28, 2008).

[11] To be clear, this dismissal does not leave Petitioner vulnerable to the risk of any applicable statute of limitations. Most courts conclude that § 2241 has no statute of limitations, Grondolsky, 2016 WL 270381, at *6 (citing cases), while others conclude that tolling is applicable, as it would be here. Pinson v. Davis, No. 11-CV-03346-BNB, 2012 WL 1278015, at *3 (D. Colo. Apr. 16, 2012) (§ 2241 petition by federal prisoner subject to equitable tolling).

[12] As the court noted in Grondolsky, 2016 WL 270381, at *5-6, before dismissing a petition pending in a district from which the petitioner has been transferred, the court should consider whether there is time to adjudicate the merits before the allegedly appropriate release date. This factor does not tip the scale in either direction in this case. If this petition becomes moot on Petitioner's published "release date," neither this Court nor the Middle District of Pennsylvania can act in time.

dismissal for failure to state a claim is nevertheless the most efficient way to proceed. See Phillips v. Seiter, 173 F.3d 609, 610-11 (7th Cir. 1999) (Posner, J.); see Grondolsky, 2016 WL 270381, at *5 (quick look at merits arguments suggests evidentiary hearing may be necessary); but see Vasquez, 233 F.3d at 697 (court lacking custodian within territorial jurisdiction should not have dismissed petition on merits). Respondent's merits motion would achieve such efficiency, by terminating this proceeding quickly at the pleading stage, thereby avoiding factual development, including the need for an evidentiary hearing. See Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("touchstone of due process is protection of the individual against arbitrary action of government"); Mitchell v. Bledsoe, No. 06-CV-624-DRH-SCW, 2012 WL 4086771, at *1 (S.D. Ill. Sept. 17, 2012) (ordering evidentiary hearing for § 2241 petition based on loss of good-time credits). Before finalizing the recommendation of dismissal with leave to refile in the Middle District of Pennsylvania, I deploy the "peek" to determine whether a quick dismissal on the merits is the wiser course. See White, 42 F. App'x at 671 (dismissing petition as meritless even though petitioner had been transferred to prison outside district).

There can be little doubt that Petitioner's plainly exhausted claims (that is, the correction of the relevant times erroneously reported in the first incident report and the delivery of the second incident report more than twenty-four hours after the incident) appear to be entirely lacking in merit. Petitioner concedes that he received the two incident reports, had a hearing before the hearing officer and got a written decision. See Cavounis v. Grondolsky, Civil No. 13-11310-FDS, 2014 WL 347622, at *2 (D. Mass. Jan. 29, 2014) (for prison discipline to violate due process clause, inmate must have been denied advance written notice of charge, opportunity to call witnesses and present evidence if consistent with institutional safety, and written statement by factfinder of evidence relied on and reasons for disciplinary action). Petitioner's

argument that the proceeding was marred by various technical failures to abide by the letter of BOP regulations is beside the point. See Wallace v. Fed. Det. Ctr., 528 F. App'x 160, 162-63 (3d Cir. 2013) (per curiam) (BOP regulations provide greater protection than the Due Process Clause); Brown v. Rios, 196 F. App'x 681, 683 (10th Cir. 2006) (failure to serve copy of incident report within twenty-four hours and alleged violation of other BOP regulations do not constitute due process violations); Figueroa v. Bureau of Prisons, Civil Action No. 11-31 Erie, 2012 WL 2594338, at *5-6 (W.D. Pa. July 5, 2012) (as long as "some evidence" supports decision and some advance notice was provided, petition challenging loss of good-time credit denied; BOP regulations exceed process required by Wolff so that technical non-compliance does not amount to due process deprivation). If only these exhausted claims were in issue, I would examine whether, despite Vasquez, this petition should swiftly be dismissed for failure to state a claim.

     Petitioner's allegedly non-exhausted claim challenging the accuracy of the breathalyzer device is another matter entirely. Petitioner alleges that he did not learn the informational foundation for this innocence-based challenge to the discipline until a May 15, 2015, conversation with a Watkinson House staffer, well after the March 6 hearing and the April 7 initial appeal. According to Petitioner's second-level appeal to the General Counsel, this staffer assured Petitioner that he would inform BOP of the snafu and advised Petitioner to appeal the discipline decision. ECF No. 1-1 at 10. Such a facially plausible claim of newly discovered evidence establishing innocence – promptly included in the second-level appeal, but which BOP ignored – may sidestep the exhaustion requirement, although the proper remedy may be remand so that Petitioner can conclude exhaustion, following which he may seek judicial review.[13] See

---

[13] To hold otherwise would leave the court without the benefit of a developed factual record appropriately analyzed by the administrative agency. Danzey v. Fed. Bureau of Prisons, No. Civ. 05-5584(RBK), 2005 WL 3406430, at *1

Maydak v. Warden, FCI Raybrook, 1 F. App'x 55, 56 (2d Cir. 2001) (vacating denial of § 2241 petition with remand to allow BOP to explain why it denied a disciplinary rehearing despite claim of new evidence); Molson v. Medina, No. 10-CV-1638, 2011 WL 1336564, at *2 (W.D. La. Mar. 15, 2011) (prisoner can include new information learned after the initial disciplinary hearing by introducing it through appeals process). Further, Petitioner's broadly stated grounds challenging the discipline at the first level ("the mistakes made by Staff, led me to believe that other mistakes were made also") permits the potentially colorable argument that he did exhaust, in that he raised "mistakes" and introduced the new information buttressing that there had been a mistake as soon as it became available to him. Cf. Maydak, 1 F. App'x at 56 (court considered § 2241 petition on merits after prisoner claimed he had new evidence on disciplinary appeal). This "peek" at the unexhausted claim establishes that it should survive Respondent's motion to dismiss based on the failure to exhaust, allowing the matter to proceed for further factual development.[14]

The "peek" clinches the matter. There certainly appears to be enough meat in this petition for it to survive Respondent's merit arguments. Nevertheless, I do not so find, leaving

---

(D.N.J. Dec. 12, 2005) (exhaustion of administrative remedies allows for development of factual record, permits agencies to apply expertise and to correct errors and conserves judicial resources); see also 28 C.F.R. § 542.15 (BOP's regulations permit delay in submission of appeal if inmate presents valid reasons for delay, but an appeal may not raise issues not raised in the lower level filings).

[14] One other complication must be addressed if this Court reaches the merits of the petition. Respondent has argued that dictum in Pepper v. United States, 562 U.S. 476, 501 n.14 (2011), effectively overruled Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974), the seminal decision holding that the accumulation of good-time credits may give rise to a constitutionally protected liberty interest entitling the inmate to procedures sufficient to ensure that the protected interest is not arbitrarily abrogated. If it did, § 2241 would no longer be available to inmates challenging the revocation of good-time credit and this petition should be dismissed. Since Pepper, courts have sidestepped this thorny question. See Francis, 798 F.3d at 36-37 (court assumes without deciding that § 2241 may be deployed in connection with loss of good-time credit after Pepper); Cardona v. Bledsoe, 681 F.3d 533, 537 n.8 (3d Cir. 2012) ("Indeed, the Supreme Court's recent opinion in [Pepper] calls into question whether an inmate can even bring a habeas claim for an actual loss of good time credits."). This petition might compel the court determining its merits to resolve the meaning of the Pepper dictum.

that to the custodial court – lacking an appropriate respondent, the issue cannot be resolved in this District.

## IV.     CONCLUSION

I recommend that the Court grant Respondent Daniel Martin's motion to dismiss (ECF No. 10) and dismiss the petition for writ of habeas corpus (ECF No. 1) without prejudice to refiling it in the Middle District of Pennsylvania, with Petitioner's immediate custodian named as the respondent.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 19, 2016